Case 4:13-cv-01313   Document 11   Filed in TXSD on 03/31/16   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
April 01, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: ROBERT T. SMITH DEBTOR | § § § § § § § | CIVIL ACTION NO. 4:13-CV-1313<br><br>BANKRUPTCY CASE NO 11-39101 |

### OPINION AND ORDER

Pending before the Court is an appeal from a judgment in the above referenced proceedings. Having considered the Bankruptcy Court's Findings of Fact and Conclusions of Law (Document No. 2-8), the parties' briefs (Document Nos. 4-8), the record, and the relevant legal authority, the Court affirms the judgment.

**I.      Background**

Appellants Dan Hennigan and Delia Stephens appeal from the Bankruptcy Court's judgment that Appellee Robert T. Smith's ("Debtor's") interest in real property located at 3727 Shore Shadows, Crosby, Texas (the "Property") is exempt as a homestead. The bankruptcy judge found:

> Debtor acquired his interest in the property under the will of Barbara Christley, Debtor's aunt. Debtor testified that he moved into the property, at Christley's request, during 2005. He testified that he lived with and cared for Christley, until she died of cancer during January, 2008.
>
> Debtor testified that he moved from Australia to move into the property. He testified that, after Christley died, he wasn't sure whether he intended to return to Australia or remain in Texas. He testified that he was born in the Houston, Texas area, and lived in Texas until he was 30 years old. He testified that he is a U.S. citizen.

(Document No. 2-8 at 2). Under Christley's will, Debtor was to receive the Property, as well as 50 percent of the residuary. *Id*. at 3. The estate was also required to pay Debtor's living expenses

while he lived in the home. *Id*. at 2. After Christley's death, a "dispute arose between Debtor and Reeve [the executor of Christley's estate] as to the timing and distribution of assets under Christley's will." *Id*. During this dispute, Debtor "borrowed money from several friends and family members in order to pay living expenses that were not disbursed by the probate estate," promising to pay them back once he received his inheritance (Document No. 2-12 at 14).

On June 3, 2010, Debtor hired Appellants to assist him in recovering his share of the estate, executing a contingent fee contract for 33 1/3% of settlement proceeds (Document No. 6-1, Ex. H). Debtor "made several applications with the probate court for distribution, both of the homestead and the residuary estate," which Reeve took as violating the will's no contest clause (Document No. 2-8 at 2). Eventually Debtor and Reeve came to a settlement agreement under which Debtor would receive the homestead and forfeit his 50% share of the residuary estate. *Id*. at 4. Reeve conveyed the Property by deed to Debtor on September 26, 2011. *Id*. On October 27, 2011, Debtor filed for Chapter 7 bankruptcy, claiming the Property as exempt and listing the contingent fee contract with Appellants as "rejected." *Id*. at 1-2. Appellants filed a proof of claim in the amount of $199,177.92 secured by the Property. *Id*. at 4.

**Legal Standard**

A district court has jurisdiction to hear bankruptcy appeals under 28 U.S.C. § 158(a)(1). Bankruptcy appeals to a district court are "taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." *Id.* at § 158(c)(2). The district court uses the same standard of review that a circuit court would employ. *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir. 1989). The district court reviews findings of fact by the bankruptcy court under the clearly erroneous standard and reviews issues of law and mixed questions of law and fact de novo. *Universal Seismic Assocs., Inc. v. Harris County (In re*

*Universal Seismic Assocs., Inc.)*, 288 F.3d 205, 207 (5th Cir. 2002). "A finding of fact is clearly erroneous when the appellate court, viewing the evidence in its entirety, 'is left with a firm and definite conviction that a mistake has been committed.'" *Bertucci Contracting Corp. v. M/V ANTWERPEN*, 465 F.3d 254, 258–59 (5th Cir. 2006). The appellant bears the burden of demonstrating that a finding of fact by the bankruptcy court is clearly in error. *Perry v. Dearing*, 345 F.3d 303, 309 (5th Cir. 2003). "As long as there are two permissible views of the evidence, we will not find the factfinder's choice between competing views to be clearly erroneous." *In re Acosta*, 406 F.3d 367, 373 (5th Cir. 2005) (citing *Anderson v. Bessemer City*, 470 U.S. 564 (1985)). "If the bankruptcy court's account of the evidence is plausible in light of the record viewed as a whole, we will not reverse it." *Id*.

II.   Discussion

Appellants raise three issues on appeal:

1. Can a resident of Australia claim a homestead in Texas as that term is used under the Texas Constitution and the Texas Property Code?

2. Did Debtor establish the homestead character of the property located at 3727 Shore Shadows Dr., Crosby, Texas?

3. Did Debtor fraudulently obtain loans from family members and friends by promising to repay these loans out of the proceeds of his inheritance?

(Document No. 2-3 at 1).

**Residency Status and Homestead Character**

The Court will consider these together, as both issues relate to Debtor's homestead exemption. "The party objecting to an exemption in bankruptcy has the burden of proving by a preponderance of the evidence that the exemption is improper." *In re Cipolla*, 476 F. App'x 301, 305 (5th Cir. 2012). "Because homesteads are favorites of the law, we must give a liberal construction to the constitutional and statutory provisions that protect homestead exemptions.

Indeed, we must uphold and enforce the Texas homestead laws even though in so doing we might unwittingly assist a dishonest debtor in wrongfully defeating his creditor." *Matter of Bradley*, 960 F.2d 502, 507 (5th Cir. 1992)(internal citations and quotations omitted). In considering a homestead exemption, the facts are considered on the date that the Debtor filed for bankruptcy. *White v. Stump*, 266 U.S. 310, 313 (1924). "It is well settled in Texas that an individual who seeks homestead protection has the initial burden to establish the homestead character of her property." *Bradley*, 960 F.2d at 507. To meet this initial burden, "the claimant must have a possessory interest in the homestead he or she is claiming. But '[m]ere ownership or possessory interest is not of itself sufficient to establish a homestead.' A claimant must show 'both (i) overt acts of homestead usage and (ii) the intention on [his] part ... to claim the land as a homestead.'" *In re Saldana*, 531 B.R. 141, 156 (Bankr. N.D. Tex.) *aff'd in part, remanded in part*, 534 B.R. 678 (N.D. Tex. 2015), *appeal dismissed* (Oct. 1, 2015)(citations omitted). "In the usual case, mere evidence of 'overt acts of homestead usage' is sufficient to meet this burden. As long as the claimant can demonstrate that she has used her property for homestead purposes, then the Texas courts will presume that the homestead claimant possesses the requisite intent." *Bradley*, 960 F.2d at 507 (citations omitted). "[I]nvestigation of intention need not be made when the land is actually put to homestead uses. Such actual use of the land is the most satisfactory and convincing evidence of intention." *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 315 (Tex. App. 1983), *writ refused NRE* (Oct. 5, 1983)(citations omitted).

The Bankruptcy Court found in its Memorandum Opinion that Appellants did not meet their burden in objecting to Debtor's exemption, writing that "Debtor's interest in the property vested on January 31, 2008" and "Debtor has established the homestead character of his property by living there for the last eight years and claiming the property as his homestead" (Document

No. 2-8 at 7). However, Appellants argue that Debtor's testimony that he wanted to go back to Australia "in the long run" evidences "Debtor's intentions at the time he filed for bankruptcy to sell the house and go back home to Australia" (Document No. 4 at 5).

Despite this testimony, the Court agrees with the decision of the Bankruptcy Court. Given the liberal construction required for a homestead exemption, and the fact that the Debtor was occupying the Property at the time, the Court is not required to make an examination of the Debtor's intentions. Appellants cite *Braden Steel Corporation v. Tom McClure* for the proposition that the Court must inquire into Debtor's intent where the Debtor has dual residences (Document No. 4 at 4)(*citing* 603 S.W.2d 288, 293 (Tex. Civ. App. 1980)). However, Debtor testified that "I don't have a home in Australia, but I resided there" (Document No. 2-11 at 38). Without an actual residence in Australia at the time of filing, the Debtor does not have dual residences, and no inquiry into intent is required. *Braden Steel*, 603 S.W.2d at 293 (" [W]e are persuaded that by owning, possessing, residing on and using the property as his home, Mr. McClure evinced by overt action an intent to use such property as his homestead; and that in the absence of dual residences […] further inquiry into his objective intent is unwarranted and immaterial."). *See also Magill v. Magill*, 816 S.W.2d 530, 536 (Tex. App. 1991), *writ denied* (Nov. 18, 1992)(This case is also cited by Appellants but similarly holds that "[t]he absence of dual residences and of any homestead disclaimer justifies no further inquiry into his intent to claim the property as a homestead.").

Appellants also cite *Roberson v. Home Owners' Loan Corp.*[1], arguing that the Court is in fact required to examine intent, as "'intention in good faith to occupy is the prime factor' in impressing property with the homestead character. Intention alone, without overt acts of

---

[1] However, this case was focused on interpretation of the Home Owners' Loan Act of 1933 and Texas statutes which have since been repealed. *Id.*; Tex. Rev. Civ. Stat. Ann. § art. 3832 (West). It also concerned a Debtor who had not even pleaded a homestead exception, which is not the case here.

homestead occupancy, cannot give a homestead right; but, at the same time, it is equally true that all other things combined cannot give it, absent the intention to dedicate it to the uses of a home." (Document No. 4 at 7)(*citing* 147 S.W.2d 949, 952-53 (Tex. Civ. App. 1941), *writ dismissed, judgment correct* (citations omitted)). *But see Matter of Kennard*, 970 F.2d 1455, 1459 (5th Cir. 1992)(finding clear error where a bankruptcy court found "unquestioned" occupancy and use of the home, but failed to apply this finding of occupancy and use in its determination of intent).

Even if the Court were to inquire into Debtor's intentions, he merely discussed a *future* move back to Australia, without any definite plans to do so. Analyzing his future plans would violate the requirement that the Court consider the circumstances at the time of a debtor's bankruptcy filing. *White*, 266 U.S. at 313. Additionally, the fact that the Debtor had "found a buyer" is not relevant, as the sale was never completed, and any sale would have taken place after Debtor's declaration of bankruptcy.[2] *Bradley*, 960 F.2d at 509 (Debtor's attempt to sell or lease parts of her farm did not defeat her homestead rights. "An intention to sell the homestead and efforts in that direction, and an intention to remove from it in case a sale is made, may coexist with an intention to remain and continue to occupy the homestead.")(*citing Gaar, Scott & Co. v. Burge,* 49 Tex.Civ.App. 599, 110 S.W. 181, 183 (1908)).

Finally, Appellants also argue that Debtor has not voluntarily designated the Property as his homestead under Tex. Prop. Code 41.005 (Document No. 4 at 8). However, "[n]o written designation of homestead is required." *In re Schott*, 449 B.R. 697, 700 (Bankr. W.D. Tex. 2011)(*citing In re Howard*, 65 B.R. 498, 502 (Bankr. W.D. Tex. 1986)(Under Tex. Prop. Code

---

[2] If such a sale had occurred, the Appellants would have been able to recover those funds six months after the sale under Tex. Prop. Code Ann. § 41.001, which holds that "[t]he homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale." (West).

41.022, debtors' failure to designate homestead until after deed was executed did not affect their homestead claim.)). Therefore, Debtor has met his burden in demonstrating the homestead character of the Property.

Once obtained, homestead rights may only be lost "through death, abandonment or alienation." *In re Perry*, 345 F.3d 303, 310 (5th Cir. 2003). Appellants make no argument that Debtor has lost his homestead rights by any of these. Therefore Appellants' objection to the homestead exemption fails.

### Fraud

The Bankruptcy Court found in its Memorandum Opinion that, "[w]ith respect to the fraud arguments under Section 522(o) of the [Bankruptcy] Code, neither Trustee nor Hennigan and Stephens presented any evidence to establish a fraudulent intent. The only evidence is that Debtor incurred debts. The court concludes that neither Trustee nor Hennigan and Stephens has met their burden of proof" (Document No. 2-8 at 7). Appellants argue that Debtor borrowed money from his family members "with the promise he would repay them when the estate settled" and that Debtor borrowed money to finance his filing for bankruptcy "knowing the only property he could pay him back with was the proceeds from the sale of the house which he intended to exempt" (Document No. 4 at 12).

Section 522(o) states that

> **(o)** For purposes of subsection (b)(3)(A) [referring to property exempted as debtor's domicile], and notwithstanding subsection (a), the value of an interest in--
> **(1)** real or personal property that the debtor or a dependent of the debtor uses as a residence; […]
> **(4)** real or personal property that the debtor or a dependent of the debtor claims as a homestead;
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such

date the debtor had held the property so disposed of.

11 U.S.C.A. § 522 (West). The elements to establishing an objection under the statute are as follows:

> (1) the debtor disposed of property within the 10 years preceding the bankruptcy filing; (2) the property that the debtor disposed of was nonexempt; (3) some of the proceeds from the sale of the nonexempt property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead; and (4) the debtor disposed of the nonexempt property with the intent to hinder, delay or defraud a creditor.

*In re Presto*, 376 B.R. 554, 568 (Bankr. S.D. Tex. 2007). As a preliminary matter, it is unclear what property Appellants claim was "disposed of," as their briefs only mention Debtor's borrowing of money. Presumably, Appellants are referring to Debtor's settlement agreement, "under which Debtor would receive the homestead, and would forgo any further distribution from the probate estate" (Document No. 2-8 at 3-4).

Debtor entered into the settlement agreement within months of the bankruptcy filing, and the residuary from the estate would not have been exempt (Document No. 2-8 at 1-4). Therefore the first two prongs are met. Debtor was previously entitled to the house under the will, but had possibly forfeited any interest in the estate by contesting the will. *Id*. at 3. Under the settlement agreement Debtor received guaranteed title to the homestead in spite of contesting the will, but forfeited any further cash distribution from the probate estate. *Id*. at 3-4. This agreement does not technically meet the third prong, as Debtor did not buy a new homestead, improve an existing homestead, or reduce debt associated with an existing homestead. *Presto*, 376 B.R. at 568.

However, even if the third prong were met, Appellants have not demonstrated fraudulent intent. Appellants have not presented any direct evidence of fraudulent intent. However, "[t]he moving party may either present direct testimony of the wrongful intent, or indirectly show intent through the badges of fraud from the Texas Uniform Fraudulent Transfer Act." *Id*. at 569

(burden under § 522(*o*) is similar to burden under §§ 727 and 548)(*citing In re Sissom*, 366 B.R. 677, 692 (Bankr. S.D. Tex. 2007)). The badges of fraud are listed in *Sissom*:

> a. The transfer or obligation was to an insider.
> b. The Debtor retained possession or control of the property after the transfer.
> c. The transfer or obligation was concealed.
> d. Before the transfer was made or obligation incurred, the Debtor had been sued or threatened with suit.
> e. The transfer was of substantially all the Debtor's assets.
> f. The Debtor absconded—i.e., avoided service of process and/or concealed himself.
> g. The Debtor removed or concealed assets.
> h. The value of the consideration received by the Debtor was [not] reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
> i. The Debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
> j. The transfer occurred shortly before or shortly after a substantial debt was incurred.
> k. The transfer was done just prior to the filing of the Debtor's bankruptcy petition.
> l. The Debtor is unable to explain the disappearance of assets.
> m. The Debtor has engaged in a pattern of sharp dealing prior to bankruptcy.

366 B.R. at 692-93 (internal citations omitted). The Court weighs each badge, and considers "more than merely the numerical majority of badges." *Presto*, 376 B.R. at 572. The Court will consider the badges below.

    a. As the Debtor still resides on and owns the Property, he has benefitted from the transfer. *Id*. at 570 ("Since the Debtor is the only person occupying the Royal Rose Property, the transfers were for his own benefit."). This badge is present.

    b. Debtor retains possession and control of the Property. This badge is present.

    c. Appellants have presented no evidence of concealment. This badge is not present.

    d. "Debtor testified that he filed the instant Chapter 7 case because the attorneys who represented him in the probate court had threatened to take the house from him" (Document No. 2-8 at 4). This badge is present.

    e. It appears that Debtor has little or no assets other than the house (Document No. 2-12

at 1). This badge is present.

    f. There is no evidence that Debtor absconded. This badge is not present.

    g. There is no evidence that Debtor removed or concealed assets. This badge is not present.

    h. The value of the consideration Debtor received is difficult to calculate, because he received guaranteed title to the house, where his ownership of the house was in question due to his contesting the will and the general cash-poor status of the estate (Document No. 2-11 at 15-16[3]). It is equally difficult to estimate the amount of cash Debtor forfeited due to the cash-poor status of the estate, and the difficulty in liquidating many of its assets. *Id*. Therefore the Court will not consider this factor.

    i. Debtor filed for bankruptcy shortly after the transfer was made, and was borrowing money before the transfer was made (Document No. 2-8 at 1, 4). This demonstrates his insolvency. This badge is present.

    j. The transfer was done shortly after Hennigan and Stephens represented Debtor in the probate court matter. *Id*. at 4; (Document No. 6-1, Ex. H). Appellants also refer to "loans from family members and friends" (Document No. 2-3 at 1), which similarly took place before the settlement (Document No. 2-12 at 12-14). This badge is present.

    k. The transfer was done in September 2011 and Debtor filed for bankruptcy in October

---

[3] Manning, an attorney for Reeve, testified as follows:
    Q As of the date of the settlement, was there any for sure answer available in terms of whether Mr. Smith was going to get the house or not? A Before the settlement? Q Right. Before the settlement? A No. […]
    Q And at the time -- at that time [of the settlement], with regard to the administration of the estate, what would have been the likely impact if there had been no settlement, because of those expenses? A We would have had to have continued to try to liquidate the residuary estate and that expense number, I believe, would have gone up and up until we finally liquidated the residuary estate and to see if there would be enough cash from his half to satisfy his debt. Q And if that was not possible, if the cash was not sufficient from that, what would have happened then? A Then the will provided that the house would be sold if there wasn't sufficient cash from the residuary to pay the pecuniary bequests and all of the debts of the estate.
(Document No. 2-11 at 15-16).

2011 (Document No. 2-8 at 1, 4). This badge is present.

 l. No disappearance of assets is alleged. This badge is not present.

 m. There is no evidence that the Debtor has engaged in a pattern of sharp dealing before filing for bankruptcy. This badge is not present.

 Seven of the twelve considered badges of fraud are present in this case. However, the Court finds that there is no fraudulent intent in this case, as Debtor was forced to accept the settlement, or risk losing the house and any other residual value of the estate. This occurred inadvertently when Debtor "made several applications with the probate court for distribution, both of the homestead and the residuary estate," thereby possibly violating the estate's no contest clause. *Id*. at 3. Debtor did not take this action intentionally, and when threatened with the loss of all of his rights under the estate, chose to settle. This does not demonstrate any fraud on his part. The badges of fraud which are present are largely due to the timing of the transactions, not due to any evidence of inappropriate action by the Debtor, such as absconding, concealing or disposing of assets, or any pattern of sharp dealing. As there is insufficient direct and indirect evidence of fraud, the Court finds that Section 522(o) does not apply.

**III. Conclusion**

 For the foregoing reasons, it is hereby

 ORDERED that the motion for status hearing (Doc. 10) is MOOT. It further

 **ORDERED** that the decisions of the bankruptcy court should be **AFFIRMED**.

 SIGNED at Houston, Texas, this 31st day of March, 2016.

_____<br>
MELINDA HARMON<br>
UNITED STATES DISTRICT JUDGE